UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BORIS D. MUDD, | |
| Plaintiff, | |
| v. | Case No. 1:24-CV-51-CCB |
| FORT WAYNE, CITY OF, et al., | |
| Defendants. | |

## OPINION AND ORDER

On February 1, 2024, Plaintiff Boris D. Mudd filed a complaint in state court against the Fort Wayne Police Department ("FWPD"), the City of Fort Wayne, and Fort Wayne Police Officers Anthony Krock and David Peters. (ECF 3). The case was removed to this Court on February 5, 2024. (ECF 1). Plaintiff brings claims under Section 1983 for violations of his Fourth and Fourteenth Amendment rights and under Indiana law. On December 2, 2024, Defendants City of Fort Wayne, the FWPD, and FWPD Officers Krock and Peters moved for summary judgment. (ECF 29). Based on the applicable law, facts, and arguments, Defendants' motion for summary judgment will be **GRANTED**.

## I.    RELEVANT BACKGROUND

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis below.

On December 2, 2022, Plaintiff was driving in Fort Wayne when he was pulled over for speeding by FWPD Officers Krock and Peters. (ECF 3 at 3). Officers Krock and

Peters approached Plaintiff's vehicle and told him that he was driving 42mph in a 35mph zone. (ECF 29-1 at 2). Plaintiff denied that he was speeding and told the officers to call their supervisor. (ECF 3 at 3); (Peters Body Camera (Exhibit H) at 1:10). Officer Peters opened the driver's side door and instructed Plaintiff to exit the vehicle. (ECF 3 at 3). Plaintiff refused to get out of the car. (*Id*.). Officer Peters and Krock grabbed Plaintiff's arms, removed him from the car, and placed him in handcuffs. (ECF 3 at 3). The officers then asked Plaintiff to identify himself, but he refused multiple times. (*Id*.).

Officer Krock tried to have Plaintiff take a breathalyzer test but Plaintiff refused. (ECF 29-1 at 3). Officer Peters told Plaintiff that he had one final opportunity to identify himself or he would be charged. (Krock Body Camera (Exhibit G) at 5:43); (Peters Body Camera (Exhibit H) at 5:45). The Officers decided that Plaintiff would be charged with refusal to identify himself and placed him in the back of the squad car. (ECF 29-1 at 3). Officer Krock ran Plaintiff's information through the police computer system and learned Plaintiff's driver's license was suspended. (*Id*. at 4); (Krock Body Camera (Exhibit G) at 10:35). The Officers transported Plaintiff to Allen County Jail where "he was denied entry" and then to Parkview hospital. (ECF 3 at 4). Plaintiff told officers the entire car ride that he would sue them and the City of Fort Wayne. (Krock Body Camera (Exhibit G) at 20:00). He was released from the hospital and taken back to Allen County Jail, where he was booked and released from custody. (ECF 3 at 4).

## II.   STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted);

*see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## III.   ANALYSIS

Plaintiff brings the following three counts in his complaint: "42 U.S.C. 1983 Fourth Amendment violation against Defendant(s) A. Krock & D. Peters for False Arrest," "42 U.S.C. 1983 Fourth Amendment violation against Defendant(s) A. Krock & D. Peters for False Arrest and Malicious Prosecution," and "1983 Fourteenth Amendment Due Process violation against Defendant(s) D. Peters & A. Krock for Fabricated Evidence." (ECF 3 at 5, 6). Plaintiff also lists seven "State Law Torts" and five "Fourth Amendment Constitutional Claims" in his complaint without any associated arguments, including "false arrest, false imprisonment, battery, conversion, false imprisonment against City of Fort Wayne, malicious prosecution, and negligent supervision and retention." (*Id.* at 3-4).

In his response to Defendants' motion for summary judgment, however, Plaintiff only argues that he has "claims for false arrest, false imprisonment, unreasonable seizure under the Fourth Amendment, and due process violation under the 14th Amendment." (ECF 34 at 3). Pro se complaints "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even construing the filings liberally, however, the Seventh Circuit has "long refused to consider arguments that were not presented to the district court in response to summary judgment motions." *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). The Court

will address Plaintiff's claims in turn, but he has waived argument for the claims he did
not address in his response.

### A.    Unreasonable Seizure, Continued Seizure, False Imprisonment, and False Arrest Claims

Plaintiff brings claims under Section 1983 for unreasonable seizure, continuing
seizure, and false arrest and claims under Indiana law for false imprisonment and false
arrest. The standards for false imprisonment in Indiana are "remarkably" similar to
Section 1983 claims for unreasonable seizure, so the Court will analyze those claims
together. *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009).

Plaintiff argues that Officers Krock and Peters violated his Fourth Amendment
right to be free from unreasonable searches and seizures when they "unlawfully and
without probable cause, searched, seized and arrested" him. (ECF 3 at 5). Central to
Plaintiff's argument is the allegation that the Officers lacked probable cause to make the
traffic stop and subsequent arrest. Defendants argue, on the other hand, that the initial
stop was justified because Officers Krock and Peters observed Plaintiff's vehicle
speeding and the arrest was justified by Plaintiff's numerous traffic violations. (ECF 30
at 4).

The Fourth Amendment protects against "unreasonable searches and seizures."
U.S. Const. amend. IV. "Whenever police stop a vehicle, the stop must meet the Fourth
Amendment's reasonableness requirement." *United States v. Lewis*, 920 F.3d 483, 489 (7th
Cir. 2019) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). "[T]he decision to stop an
automobile is reasonable where the police have probable cause to believe that a traffic

violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause is an objective standard that exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *Lewis*, 920 F.3d at 489 (citing *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)). Probable cause "requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056–57 (7th Cir. 2011). In other words, if a police officer reasonably thinks that he or she sees a driver "commit a traffic violation, that is sufficient grounds to pull him over without offending the Constitution." *Id.*

Additionally, the Supreme Court has held that the Fourth Amendment does not forbid "a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001). Once an officer has probable cause to "conduct the traffic stop of [plaintiff] for speeding, he could arrest [plaintiff] without violating his Fourth Amendment rights." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). The question to be asked, then, is whether Officers Krock and Peters had probable cause.

Defendants argue that Officers Krock and Peters had probable cause to believe that Plaintiff violated several traffic laws. Defendants argue that the Officers observed Plaintiff's first traffic violation when they saw him exceeding the speed limit by driving 42-mph in a 35-mph speed zone. (ECF 30 at 7). The Officers had the probable cause to conduct the traffic stop for speeding. *See Jones*, 737 F.3d at 1115.

6

When they approached his vehicle after pulling him over, Plaintiff was immediately argumentative and the Officers noted Plaintiff smelled like alcohol, was slurring his words, and had dilated pupils. (ECF 29-1 at 3); (Krock Body Camera (Exhibit G) at 7:41, 10:45). Plaintiff refused to provide a sample for the breathalyzer and repeatedly refused to identify himself, even after being told multiple times that he would be arrested if he did not provide his name to the Officers. (ECF 30 at 5). Plaintiff was then arrested. (*Id.*). Officers conducted a search incident to arrest and found Plaintiff's Indiana ID, ran his name in the police database, and discovered his license was suspended. (*Id.*). Officers also saw that his license plate was expired. (*Id.*). Plaintiff was charged with "Operating While Intoxicated under Indiana Code 9-30-5- 2(a); Operating While Intoxicated under Indiana Code 9-30-5-2(b); Driving While Suspended – Prior under Indiana Code 9-24-19-2; and Refusal to Identify Self under Indiana Code 34-28-5-3.5," but the Court need address only one violation. (*Id.* at 6).

> Indiana Code 34-28-5-3.5, titled "Refusal to Identify Self," states:
> Sec. 3.5. A person who knowingly or intentionally refuses to provide either the person's:
> (1) name, address, and date of birth; or
> (2) driver's license, if in the person's possession;
> to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

Plaintiff was stopped for a traffic infraction—speeding—and refused to provide his name, address, date of birth, or driver's license. He told Officers that he did not have a name or ID, but when they searched him after his arrest, they discovered an Indiana ID in his pocket. (Krock Body Camera (Exhibit G) at 3:19; 5:48). Therefore, a reasonable

jury could only conclude that Officers Krock and Peters did have probable cause to believe that Plaintiff violated Indiana Code 34-28-5-3.5.

Plaintiff argues that the alleged speeding "while a minor traffic infraction, did not warrant further investigation beyond a warning or citation," so the Officers' "decision to inquire further into [his] license status" violated *Rodriguez v. United States.* (ECF 34 at 3,4). Defendants correctly argue, however, the Supreme Court in *Rodriguez* held "[b]eyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." 575 U.S. 348, 349 (2015). Therefore, the Officers were able to check Plaintiff's license status during the stop without unnecessarily extending the stop or violating Plaintiff's constitutional rights. Plaintiff's allegation that the Officers violated his rights by wrongfully continuing the seizure must fail because the stop was "not prolonged beyond the time reasonably required." *Rodriguez*, 575 U.S. 348, 349 (2015). In fact, the traffic stop lasted less than fifteen minutes before the Officers transported Plaintiff to the Allen County Jail. (Krock In-Car Camera (Exhibit F) at 0:45; 13:37).

Plaintiff also alleges in his response to Defendants' motion for summary judgment that the towing of his vehicle violated his Fourth Amendment rights to be free from unreasonable seizures because the Officers lacked probable cause and the "vehicle was lawfully parked and posed no threat to public safety." (ECF 34 at 4). Defendants argue in response that "an impoundment of a vehicle is allowed when it is

part of routine administrative caretaking functions of the police or when it is authorized by statute." (ECF 36 at 8) (citing *South Dakota v. Opperman,* 428 U.S. 364, 370 (1976)). They continue, arguing that Plaintiff has no facts to dispute that he was lawfully arrested and a lawful pre-inventory search of his vehicle was conducted before his vehicle was lawfully towed. (*Id.*).

Defendants are correct. "[T]he inventory-search exception states that a warrantless search of a vehicle before impoundment is lawful if conducted in conformity with standard police procedures aimed at protecting the owner's property." *United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010). As discussed above, Plaintiff's arrest was legal and the Officers did have probable cause, so Plaintiff's argument to the contrary is unpersuasive. The impoundment of Plaintiff's vehicle was lawful. Opperman, 428 U.S. at 370. The Officers' search of Plaintiff's vehicle before impounding it was also legal because it was conducted in conformity with the FWPD's policies and procedures, as outlined in its "Motor Vehicle Tow and Inventory Policy." (ECF 29-5 at 1). A reasonable jury could not find that the inventory search and towing of Plaintiff's vehicle violated the Fourth Amendment.

Related to the issue of towing, Plaintiff also brings a state law claim for conversion. To prove conversion under Indiana law, a plaintiff must demonstrate that the defendant "exert[ed] unauthorized control over property of another[.]" Ind. Code § 35-43-4-3. As previously discussed, the Officers lawfully impounded Plaintiff's vehicle incident to his arrest in compliance with FWPD policies and procedures. Further,

Plaintiff alleges no facts or argument to support his claim for conversion, he merely named it as a claim. Plaintiff "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element." *Robin*, 200 F.3d at 1088. His failure to do so means his claim for conversion must fail.

Defendants are thus entitled to summary judgment on Plaintiff's unreasonable seizure, continued seizure, false imprisonment, and conversion claims. *Schor v. City Of Chicago*, 576 F.3d 775, 778 (7th Cir. 2009) ("the Fourth Amendment is not violated if a police officer has probable cause for a traffic stop").

Additionally, Plaintiff pleads no facts to support his claims of false arrest. Probable cause "is an absolute defense to a false arrest claim." *Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024). No reasonable jury could find that Officers Krock and Peters lacked probable cause in arresting Plaintiff. Other than stating the claim for "false arrest" Plaintiff presented no facts or argument. Summary judgment is the "put up or shut up moment in a lawsuit" and Plaintiff needed to present what evidence he had to convince the Court that there is a genuine dispute of material fact as to his continued seizure and false arrest claims. *Hammel*, 407 F.3d at 859. He did not do so and therefore his claims for false arrest must fail.

Defendants' motion for summary judgment is thus **GRANTED** as to the unreasonable seizure, continued seizure, false imprisonment, conversion, and false arrest claims.

**B.    Excessive Force and Battery**

Plaintiff also argues that the Officers used excessive force and battered him when they handcuffed and arrested him. (ECF 3 at 5).

Excessive force claims under Section 1983 are analyzed under the Fourth Amendment "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "This inquiry requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir.2000)). "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest." *Id.* This inquiry is done from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. An arresting officer also "has the right to use some degree of physical force or threat of force to effectuate the arrest." *Id.*

Plaintiff does not present or designate any facts to support his allegation that the Officers used excessive force in arresting him. Police officers are allowed to order suspects to exit a car, use handcuffs, and pat suspects down during a traffic stop. *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004). The body camera footage shows no excessive force by Officer Krock or Officer Peters. As argued by Defendants, "Officer Krock and Officer Peters' very minimal use of force was reasonable," they did not use

greater force than necessary to effectuate Plaintiff's arrest. (ECF 30 at 12); *Phillips v. Cmty. Ins.*, 678 F.3d 513, 519 (7th Cir. 2012). No reasonable jury could find that the Officers used excessive force in handcuffing Plaintiff during his arrest.

To find a police officer committed battery, the officer must have used "unnecessary or excessive force." *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010). "Indiana's excessive force standard effectively parallels the federal Fourth Amendment." *Gupta v. Melloh*, 19 F.4th 990, 1002 (7th Cir. 2021). Plaintiff's battery claim thus rises or falls with his excessive force claim and the Court has already found that no reasonable jury could find that Officer Krock or Officer Peters used excessive force in handcuffing Plaintiff. Therefore, his claim for battery must fail and Defendants' motion for summary judgment is **GRANTED** as to the excessive force and battery claims.

### C.    *Monell*

Plaintiff named the City of Fort Wayne and the FWPD as Defendants, but it is unclear what claims he is bringing against them. In his complaint, he alleges that "[i]t is the custom, pattern or practice of the defendants to violate an individual's rights in the manner set forth herein," and that "the municipal defendant staffed its police department with officers . . . who were unsupervised, undisciplined, inadequately trained and wholly unsuited to perform as police officers." (ECF 3 at 2, 3). In his response to Defendants' motion for summary judgment, he alleges that

> the City of Fort Wayne and the Fort Wayne Police Department have a
> pattern, policy, or custom of allowing unconstitutional stops, searches,
> and seizures. These actions result from inadequate training, supervision,
> and discipline of officers like Peters and Krock, making the city liable
> under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

(ECF 34 at 4-5). Construing his filings liberally, the Court will address his *Monell* claim against the City of Fort Wayne and then turn to his claim against FWPD.

### 1.    City of Fort Wayne

A plaintiff can sue local governments under Section 1983 when an official policy of that local government inflicts the injury that the government as an entity is allegedly responsible. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, a local government may be liable for monetary damages if the plaintiff can show that the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). It is unclear "how frequently conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'" *Thomas*, 604 F.3d at 303 (quoting *Cosby v. Ward,* 843 F.2d 967, 983 (7th Cir. 1988)).

Plaintiff alleges that the City of Fort Wayne has a "pattern, policy or custom of allowing unconstitutional stops, searches, and seizures," which he argues stems from a failure to train or supervise. (ECF 34 at 4-5). He alleges that "[e]ach of the defendants on prior occasions has violated the rights of other individuals in a manner similar to the one alleged herein," but provides no allegations or evidence substantiating this claim. (ECF 3 at 2). Defendants argue that Plaintiff's complaint is "vague and ambiguous," and if he is making a *Monell* claim, it fails because he failed to "point to an official policy or

custom of the City of Fort Wayne approving of the alleged unconstitutional conduct."
(ECF 30 at 22). Defendants also argue that "the non-moving party cannot rest on the
mere allegations or denials contained in his pleadings but must present sufficient
evidence to show the existence of each element of its case on which it will bear the
burden at trial." (ECF 36 at 13) (citing *Garcia v. Lowe's Home Centers, LLC*, 2024 WL
4723097 (N.D. Ind. 2024)).

      The Court agrees with Defendants. Summary judgment is the "put up or shut up
moment in a lawsuit" and Plaintiff needed to present what evidence he had to convince
the Court that there is a genuine dispute of material fact as to FWPD's policies or
practices regarding warrantless arrests. *Hammel*, 407 F.3d at 859. For a *Monell* claim, a
plaintiff must show that *the unconstitutional act complained of* was caused by an official
policy, a practice or custom that is widespread and well settled, or an official with
policy making authority. *Thomas*, 604 F.3d at 303 (emphasis added). Plaintiff has failed
to establish that he was subjected to any unconstitutional treatment during his
detainment and subsequent arrest. Therefore, his *Monell* claim must fail.

      Even if he were to have alleged a plausible claim of an unconstitutional act, he
merely alleges that "the rights of other individuals" were violated in a similar manner.
(ECF 3 at 2). He does not present any facts or evidence to support his allegations. He
relies only on his own individualized experiences, without evidence of constitutional
violations experienced by anyone else, to support his *Monell* claim, which is not enough.
*Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) (the Seventh Circuit

has "repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations.").

In rare circumstances, it is possible for a single violation to suffice for "failure-to-train" liability, as is alleged here, "where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend,* 997 F.3d 725, 731 (7th Cir. 2021). "To establish single-incident liability, a plaintiff must prove that municipal policymakers know that its employees will confront a given situation and not train for it, and the need for training must be obvious without consideration of prior violations." *Id.* at 734-35 (internal citations omitted). The Seventh Circuit has made it clear that the single-incident theory is reserved only for narrow circumstances "when a municipality fails to train its employees, who 'have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Id.* at 735 (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)). "Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiff has not shown that the policymakers knew that its employees would confront a given situation and not train for it here. *Flores,* 997 F.3d at 731. Nor has he presented evidence to support an allegation that the FWPD employees had "no knowledge at all" of the constitutional limits that govern their conduct or that the failure to train Officers Krock and Peters was the result of a deliberate or conscious choice. *Id.* at 735; *Canton*, 489 U.S. at 389. Plaintiff's *Monell* claim thus fails and

Defendants' motion for summary judgment is **GRANTED** as to the *Monell* claim against the City of Fort Wayne.

Plaintiff also seems to be bringing a state law claim for negligent supervision and retention. "Under a theory for negligent retention and supervision, liability may be imposed on an employer when an employee 'steps beyond the recognized scope of his employment to commit a tortious injury upon a third party.'" *Cruz v. New Centaur, LLC*, 150 N.E.3d 1051, 1059 (Ind. Ct. App. 2020) (quoting *Clark v. Aris, Inc.*, 890 N.E.2d 760, 765 (Ind. Ct. App. 2008)). As argued by Defendants, the Officers were "acting in the course and scope of their employment" when they detained and arrested Plaintiff. (ECF 30 at 21). Plaintiff did not designate any evidence or present any argument to the contrary. At this stage, Plaintiff "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element." *Robin*, 200 F.3d at 1088. He needed to present evidence "to convince a trier of fact to accept [his] version of the events." *Hammel*, 407 F.3d at 859. His failure to present any facts or evidence means this claim must fail and Defendants' motion for summary judgment is **GRANTED** as to the negligent supervision and retention claim.

### 2.    FWPD

Plaintiff mentioned the FWPD in his *Monell* claim, but he did not raise any other clear claims against the FWPD. To the extent that Plaintiff was attempting to bring claims against FWPD, these claims would fail because as noted by Defendants, the FWPD is not a suable entity under Section 1983. (ECF 30 at 18); *Averhart v. City of*

16

*Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004); *see West v. Waymire,* 114 F.3d 646, 646–47 (7th Cir.1997) (noting that Indiana municipal police departments lacked capacity to be sued). As a result, Defendants' motion for summary judgment is **GRANTED** as to all claims against the Fort Wayne Police Department.

### D.    Malicious Prosecution and Fabricated Evidence

Plaintiff brings malicious prosecution claims under both Section 1983 and Indiana law. He alleges that Officers "Peters & Krock engaged in malicious prosecution by fabricating evidence and pursuing baseless charges" against him. (ECF 3 at 6). He says the fabricated evidence was that Officer Peters "swore out a probable cause affidavit stating he had 'paced' the plaintiff's automobile," but the "video showed no evidence of a 'pace.'" (*Id.*). Defendants argue that both malicious prosecution claims should be dismissed because Plaintiff "has not set forth any facts to establish any of the elements of a malicious prosecution claim" and there "is no evidence that Officer Krock or Officer Peters acted maliciously." (ECF 30 at 13).

To bring a Section 1983 claim for malicious prosecution, a plaintiff "must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Washington v. Summerville*, 127 F.3d 552, 558–59 (7th Cir. 1997). To bring a claim for malicious prosecution under Indiana law, on the other hand, a plaintiff must show "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant

had no probable cause to institute the action; and (4) the original action was terminated

in the plaintiff's favor." *Id.* Malice may be shown "by evidence of personal animosity or

inferred from a complete lack of probable cause or a failure to conduct an adequate

investigation under the circumstances." *Id.* (citing *Golden Years Homestead, Inc. v.*

*Buckland,* 557 F.3d 457, 462 (7th Cir.2009)).

Plaintiff offered no facts or evidence purporting to show malice. In fact, the only

argument presented by Plaintiff related to the malicious prosecution claims was that

"the defendants' sworn statement and probable cause affidavit contradict each other"

because his vehicle could not "be on those two streets at the same time going

northbound." The probable cause affidavit states the following

> we observed a black in color 2015 Chevy Impala … traveling South bound
> on Hessen Cassel Rd approaching E Paulding Rd. I paced the black in
> color Chevy Impala traveling at 42mph in a posted speed limit zone of
> 35mph. At this time, I activated my emergency lights and siren and the
> vehicle came to a stop at E. Paulding Rd and St. Henry's Ln.

(ECF 34-1 at 1). Officer Krock states in his affidavit that they "paced the Chevy Impala

traveling 42-mph in a 35-mph zone southbound on Hessen Cassel Road." (ECF 29-1 at

2). He says that they activated the emergency equipment "near the intersection of East

Paulding Road and Churchill Drive" and the Chevy Impala "continued westbound

until it turned northbound onto Churchill Drive" where it came to a stop. (*Id.*). Officer

Peters' affidavit is consistent with Officer Krock's affidavit. (ECF 29-2 at 2).

Whether Plaintiff's vehicle came to a stop at St. Henry's Lane and E Paulding

Road or on Churchill Drive is an immaterial disputed fact. This small, disputed fact is

immaterial and does not indicate that either Officer acted maliciously. Plaintiff did not

present evidence or even allege that the probable cause affidavit was "*knowingly* false,

that [the Officers] withheld exculpatory evidence from the prosecutor, or that [the

Officers] took steps to wrongfully further what [they] knew was a baseless

prosecution." *Serino v. Hensley*, 735 F.3d 588, 594 (7th Cir. 2013). Plaintiff simply failed to

present evidence or argument that would imply malice on the part of either Officer.

Even if Plaintiff did argue the Officers acted maliciously, his claims for malicious

prosecution would still fail on the third prong under Indiana law because the Officers

did have probable cause. Plaintiff asserts that the "video showed no evidence of a

'pace,'" however the in-car camera shows at least 30 seconds of time where the Officers

were driving behind Plaintiff when the pacing could have occurred. (Krock In-Car

Camera (Exhibit F) at 0:00-0:33).

There are no disputed issues of *material* fact here and no reasonable jury could

find that either Officer acted with malice or without probable cause. Therefore,

Plaintiff's claims for malicious prosecution under both Section 1983 and Indiana law

fail. Defendants' motion for summary judgment is **GRANTED** as to the malicious

prosecution claims.

Plaintiff also brings a claim alleging his Fourteenth Amendment right to due

process was violated by the Officers when they fabricated evidence. "[A] a police officer

who manufactures false evidence against a criminal defendant violates due process if

that evidence is later used to deprive the defendant of [his] liberty in some way." *Avery*

*v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017). The question is whether "the

officers 'created evidence that *they knew to be false.*'" *Id.* (quoting *Petty v. Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)* (emphasis added)). Plaintiff did not present any evidence to support a conclusion that the Officers created evidence that they knew was false. As mentioned above, there were more than 30 seconds of time where the Officers could have been pacing Plaintiff. (Krock In-Car Camera (Exhibit F) at 0:00-0:33). Plaintiff presented no evidence or argument to support his claim of fabricated evidence. Therefore, Defendants' motion for summary judgment is **GRANTED** as to the fabricated evidence claims as well.

### E.    Injunctive Relief

Plaintiff requested that the Court permanently enjoin "defendants from enforcing their customs, policies, patterns, and practices as described herein that violate constitutional rights," permanently enjoin "defendants from taking any further retaliatory actions against Plaintiff for exercising his constitutional rights," and order "the defendants to implement and enforce proper policies and practices including appropriate training and supervision to protect employees and individuals from infringement of their constitutional rights." (ECF 3 at 7).

"[A] plaintiff seeking injunctive relief must show that he is in immediate danger of sustaining some direct injury." *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff has not

shown that he is in immediate danger of sustaining a direct injury nor has he shown that his past exposure to allegedly illegal conduct shows a present controversy regarding injunctive relief. *Id.* Thus, Plaintiff lacks standing to bring this claim. Therefore, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's request for injunctive relief.

### F.    Punitive Damages

Plaintiff also requested that the Court award $10,000,000 in punitive damages. Punitive damages are only appropriate in a Section 1983 action "when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 30 (1983). Defendants are correct that Plaintiff has not shown evidence that the Officers were motivated by evil motive or intent, or reckless or callous indifference to Plaintiff's rights. (ECF 30 at 24). Further, nothing in the record would support a conclusion that Defendants' behavior meets that standard. Therefore, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's request for punitive damages.

### IV.    CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED**. (ECF 29).

SO ORDERED on August 27, 2025.

  /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT